## Barnitz *against* Smith.

Upon an appropriation of the proceeds of the sale of real estate by the sheriff, a lien for the balance of the purchase money, subject to which the land was conveyed to the defendant, is entitled to priority over subsequent judgment creditors.

APPEAL by Martin Shearer's assignees from the decree of the Court of Common Pleas of York county, distributing the money arising from the sale of the real estate of Michael Smith.

Jacob Barnitz claimed the money upon a judgment against Michael Smith for $800, entered on the 9th of April 1835. Upon this judgment executions issued, and the real estate of the defendant was levied and sold for $1000.

The appellants, to support their claim to the money, gave in evidence that Anthony Willet died seised of the land, out of which the money was made, and now in court; and that after his death, Martin Shearer, his administrator with the will annexed, sold the land to Michael Smith upon the following terms, in pursuance of which they now claimed the money :—

### Conditions of Sale.

The subscriber, administrator with the will annexed, of *Anthony* Willet, deceased, proposes this day to sell at public vendue four tracts and lots of land, all held under patent, situate in Manheim township, York county, Pennsylvania, adjoining lands of Jacob and Henry Albright, George Shrof, John Kalkrieder, John S. Dubbs, John Waltman, Conrad Felty, George Mayer, and the heirs of Michael Bucher, Barnard Albright, and John Swartzbach, deceased, and each containing as follows, viz :

No. 1. Containing 129 acres and 60 perches, neat measure.
No. 2. Containing 61 acres and 70 perches, neat measure.
No. 3. Containing 3 acres and 130 perches, neat measure.
No. 4. Containing 4 acres and 79 perches, neat measure.
And will be sold on the following terms :—

The highest and best bidder shall be the purchaser.

The purchasers of lots No. 1. and No. 2. will be required to pay the one-half part of the purchase money each lot of land will amount to per acre, on the first day of April next ensuing the date hereof, and the remainder thereof to be paid in four equal annual payments; the first thereof to be paid on the first day of April 1836; the next on the first day of April 1837; the next on the first day of April 1838; the last thereof on the first day of April 1839.

The purchasers of lots No. 3. and 4. will be required to pay the one-half part of the purchase money each lot of land will amount to per acre, on the first day of April next ensuing the date hereof, and the remainder thereof to be paid in two equal annual payments; the first thereof on the first day of April 1836; and the last thereof on the first day of April 1837; for which annual payments aforesaid bonds shall be given with approved security, and be a lien on the land at the time the hand-money is to be paid.

The purchaser or purchasers of each tract or lot of land as aforesaid, to receive good and lawful deeds of conveyance by him or them purchased, clear of all judgments, mortgages, or liens, on the first day of April next ensuing the date thereof, or at any reasonable time after the hand-money is all paid and bonds given for the annual payments, with security as aforesaid, and then to have possession. But all the grain in the ground is excepted, to cut and carry away the same, the straw to remain to be thrashed in the barn. If the purchaser or purchasers of the within mentioned tracts and lots of land, or any of them, shall neglect or fail to comply with the above conditions, the subscriber shall be at full liberty to resell the same, either by public or private contract, and the deficiency (if any) occasioned by such second sale, together with all expenses attending the same, shall immediately after the said sale be made good to the subscriber by the defaulter at this present sale; and in case of the non-payment of the same, the whole thereof shall be recoverable by the subscriber as and for liquidated damages.

Given under my hand this 2d day of December 1834.

MARTIN SHEARER.

Know all men by these presents, that I, Michael Smith, have purchased lots No. 1. and 2., containing 190 acres and 130 perches of land, neat measure, at the rate of nine dollars per acre, according to the terms of the within conditions; and I have also purchased lot No. 4., containing four acres and seventy-nine, perches, neat measure, at the rate of $10.30 per acre, neat measure, according to the terms of the within conditions; and I do hereby bind myself, my executors, and administrators, to comply with the within conditions in every respect thereof. Witness my hand and seal this second·day of December 1834.

MICHAEL SMITH. [SEAL].

In pursuance of sale made to Michael Smith, Martin Shearer, administrator *de bonis non*, with the will annexed, of Anthony Willet, executed a deed to Michael Smith for part of the premises mentioned in the above conditions of sale, viz: No. 1. and 2. and 4., and bearing date 20th of March 1835, and concluding as follows, to wit:

To have and to hold the said tract of land, as above described with the hereditaments, and premises, and appurtenances hereby granted or mentioned, or intended so to be, unto the said Michael Smith, and to his heirs and assigns, to their only proper use and behoof for ever, for such estate, and under such restrictions and conditions as the said Anthony Willet at and immediately before his death, did hold the same according to the forms and effect of the laws and usages of the commonwealth in such case made and provided. In witness whereof the said Martin Shearer, the administrator, with the will of Anthony Willet, deceased, annexed, hath hereunto set his hand and seal the day and year above written. Subject to the proviso or condition of sale that there shall be a lien on the land until the whole amount is paid by the said Michael Smith or his heirs.

MARTIN SHEARER.  [SEAL].

Sealed and delivered, in the presence of

WM. R. HOWE,
JOHN L. HINKLE.

Received, on the day of the date of the foregoing indenture, of the within named Michael Smith, the full and complete satisfaction for the sum of one thousand seven hundred and fifty-four dollars and seventeen cents in full, for the consideration money above mentioned.

$1754.17.                              MARTIN SHEARER.

The sale was made by the sheriff on the 25th March 1837. On the 7th of August 1837, rule upon the sheriff to bring the money into court, and to show cause why it should not be paid to Martin Shearer. This rule was not disposed of until on the 5th of November 1840. Rule on the late sheriff to show cause why he should not bring into court the proceeds of sale, with the interest thereon. The court directed the sheriff to bring in the principal and rule discharged as to the interest.

On the argument the following deposition was read:—

Deposition taken under a rule of court on behalf of Jacob Barnitz, before Jesse Frysinger, Esq., a justice of the peace, 9th of March 1841, of John L. Hinkle.

Question.—Did you take the acknowledgment of the deed annexed to this half-sheet of paper — Martin Shearer to Michael Smith?

Answer.—I did.

Question.—Was the written line above the signature of Martin Shearer, beginning with the words "Subject to the proviso and condition of sale," &c., in the said deed at the time of taking such acknowledgment or not?

Answer.—Does not recollect that it was in.

The court decreed and ordered the money to be paid to Jacob Barnitz the judgment creditor.

*R. J Fisher*, for appellants, contended that the proceeds should be applied to the equitable lien of Martin Shearer, and on this point cited 7 *Serg. & Rawle* 80; 2 *Dall.* 131; 1 *Rawle* 294; 8 *Watts* 202; 2 *Watts* 378; 7 *Watts* 149; 8 *Watts* 396.

*Chapin*, for appellee, contended that the deed created a conditional estate, and that the remedy of the appellant was against the land, and cited 2 *Watts* 378; 9 *Watts* 15.

The opinion of the Court was delivered by

HUSTON, J.—The appropriation of money raised from land by sale on execution has been a subject of frequent discussion in our courts—and not in cases yet settled—considering a lien to be a right to receive a sum of money from the proceeds of a tract of land when sold, and considering the different modes in which such liens may be created—as by Act of Assembly, by acts or decisions of courts, or by the agreements of the parties—and also that several liens, consecutive in point of time and date, may bind the same land, it is not to be wondered at that apparent difficulties occur. Expressions used by a judge, or solemn decisions by courts on other questions, totally distinct from lien, were in contest, and are brought in to perplex a court. The decision, in ordinary cases, that articles of agreement for the sale of land are merged in a deed executed, is urged, forgetful that if the articles contain provisions for something more than the execution of a deed, that may remain in full force after a conveyance has been executed and accepted. This doctrine, however, has no application to this case; for the agreement that the balance of the purchase money shall be a lien on the land till the whole amount is paid is in the deed as well as in the conditions of sale.

It would be useless to these parties, and improper, to pretend to lay down what would be the law in all cases of conflicting liens. That would be an attempt to decide cases not before us, in which we have not heard the parties or their counsel. It will, perhaps, be found that the present has already been decided by this court. *Stewartson* v. *Watts*, 8 *Watts* 396. Stewartson conveyed to his vendee and heirs, &c., to have and to hold, &c., in usual form, subject to the payment of the said sum of $2804.20, intended to be secured by mortgage. After several transfers, the vendee in possession became indebted, and the land was sold by the sheriff for his debts. Stewartson, the original vendor, brought ejectment, and this court held that he could not recover, because he might have claimed and taken his debt out of the proceeds of the sheriff's sale. A case as full to the point is found in 2 *Watts* 16, *Episcopal Academy* v. *Freize*. The Academy sold by articles in 1824; afterwards the Academy, in 1827, executed a deed in fee simple, but containing the clause " subject to the payment of the balance of the purchase money," and same day took a mortgage for the

I. — 19    N

[Barnitz v. Smith.]

purchase money, but which was not recorded until after others had obtained judgment against the mortgagor. The land was sold by the sheriff. This court, on appeal, decreed the money to the Academy. The mortgage was considered as a means to compel payment of the money. " The lien of the conveyance was never suspended or interrupted, and the trustees of the Academy are entitled to be paid first." The deed in that case was never recorded. These cases, and at least one other to the same effect, must govern the case before us.

Shearer when selling, and Smith when purchasing, agreed that the purchase money should remain a lien on the land. The creditors of Smith have no right to object to such agreement; but for it, Smith never would have had any interest in this land, nor his creditors any claim to the proceeds of what would never have been his; Smith could not have sold it otherwise than subject to the balance of purchase money; his creditors could only sell it so subject. But land subject to a lien (unless some indefinite continuing lien), when sold on execution, discharges the lien which comes in for the purchase money. The decree of the court as to interest, while this contest was going on, is not complained of, and was probably correct. This court order and decree the money in court to be paid to discharge the purchase money due on the bonds given to Martin Shearer for the balance of the purchase money—suspending interest while the money laid dead in court—and the balance, if any, to Jacob Barnitz; and we reverse the decree of the Court of Common Pleas of York county.

It may be proper to state, that the negative testimony of the officer before whom the deed from Shearer to Smith was acknowledged, that " I did," in answer to the question " whether he took the acknowledgment," and to the question, " do you recollect was the written line above the signature of Martin Shearer ' subject to the proviso or condition of sale that there shall be a lien on the land until the whole amount is paid by Michael Smith, the purchaser' in the deed at the time of taking the acknowledgment or not ?" Answer : " I don't recollect that it was :" I say that no regard was paid to this by this court. It is too indefinite—it, in plain English, proves nothing to the purpose.

As Martin Shearer sold the land in question as the representative of Anthony Willet, and held these bonds in such right, his assignees will inquire whether this money goes to them at all, or if it does, whether it goes to them as trustees for the creditors or heirs of Willet, or for the creditors of Shearer.

Decree reversed, and money decreed to the person entitled to the bonds and judgments given by Michael Smith to Martin Shearer, administrator, &c., of A. Willet.